IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DS WATERS OF AMERICA, INC.,
   Plaintiff,
     v.

TWIN CITY FIRE INSURANCE
COMPANY,
   Defendant.

CIVIL ACTION FILE
NO. 1:09-CV-1819-TWT

ORDER

This is declaratory judgment action arising out of an insurance coverage dispute. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 97] and the Defendant's Motion for Summary Judgment [Doc. 98]. For the reasons stated below, the Plaintiff's Motion for Summary Judgment [Doc. 97] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. 98] is GRANTED.

I. Introduction

Twin City Fire Insurance Co. issued a Private Choice Encore! Policy to DS Waters Holdings, LLC on November 15, 2007. The policy covered entity claims made against DS Waters during the policy period. Endorsement 9 to the policy, titled "Prior Acts Exclusion," limited the scope of the policy's entity liability coverage by

excluding coverage for claims "based on, arising from, or in any way related to any Wrongful Act" occurring before November 15, 2004, or "any Interrelated Wrongful Acts thereto." (Compl., Ex. A at Endorsement No. 6.)

On February 21, 2008, a class action case was filed against DS Waters in California. The complaint alleged that DS Waters advertised "Nursery Water," a fluorinated water product produced by the company, as "sponsored, approved, and/or certified by the ADA, CDC, and/or AAP" when it was not sponsored, approved, or certified by any of these organizations. (Def.'s Mot. for Summ. J., Ex. B at 7.) The complaint defined the class period as February 21, 2004, to February 21, 2008. (Id. at 11.) DS Waters notified Twin City of the claim on October 27, 2008. Twin City denied coverage. Three months later, DS Waters settled the lawsuit. DS Waters then sued Twin City in this Court seeking indemnity and defense costs associated with the California lawsuit. Both parties now move for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

(1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

### III.  <u>Discussion</u>

Twin City says that the Prior Acts Exclusion in Endorsement 9 and the Notice Provision in Endorsement 2 bar coverage.

#### A.    <u>Prior Acts Exclusion</u>

The class action complaint defined the class period as February 21, 2004, to February 21, 2008.  Part of this period predates the November 15, 2004 Prior Acts Exclusion date defined in Endorsement 9.  Because DS Waters settled the class action without challenging the class period, Twin City says that the Prior Acts Exclusion bars coverage.  DS Waters says that Endorsement 9 is invalid and ambiguous and that, in any event, the company did not commit any wrongful acts before November 15, 2004.

First, DS Waters says that Endorsement 9 is invalid because it was not signed by a representative of DS Waters or Twin City.  However, the endorsement was physically attached to the policy received and signed by DS Waters.  Although

Georgia courts have not considered the validity of an unsigned endorsement in these circumstances, other courts have held that an unsigned endorsement is valid if it is attached to the policy. See Metropolitan Life Ins. Co. v. Glisson, 295 F.3d 1192 (11th Cir. 2002) (applying Alabama law) ("The fact that defendants never signed the endorsement does not preclude them from being bound by it."); see also Richard A. Lord, Williston on Contracts § 49:23 ("An endorsement need not be referenced in the application for insurance, nor signed by the applicant to become an effective part of the policy."). Consistent with those cases, the Court finds that the absence of a signature does not void the endorsement.

Next, DS Waters argues that Endorsement 9 is ambiguous because it is unclear where in the policy the exclusionary language should be inserted. The Court disagrees. When the policy and the endorsement are read as a whole, there is no ambiguity about the meaning or scope of the exclusionary language in Endorsement 9.

Finally, DS Waters says that the Prior Acts Exclusion does not bar coverage because the company committed no wrongful acts before November 15, 2004, the Prior Acts Exclusion date. It presents deposition testimony from class members, sworn testimony from its regional marketing manager, and copies of advertisements circulated before November 15, 2004, to support its position. (See Pl.'s Mot. for

Summ. J., Ex. 4.)  Twin City says that DS Waters is estopped from challenging the applicability of the Prior Acts Exclusion because it settled the class action lawsuit without challenging the class period, which began on February 21, 2004.  The Court disagrees.  DS Waters did not admit liability in the settlement agreement.  Moreover, even if it had, it is unclear which of the settled claims arose from wrongful acts occurring before November 15, 2004, and which of the settled claims are interrelated to those claims.  Accordingly, Twin City is not entitled to summary judgment based on the Prior Acts Exclusion.

B.     Notice Provision

Twin City also asserts that the Notice Provision bars coverage.  Endorsement 2 to the policy requires DS Waters to give notice of any claim "as soon as practicable, but in no event later than sixty (60) days after the General Counsel, Chief Financial Officer or the Human Resource Manager becomes aware that such Claim has been made, and in no event later than sixty (60) days after the termination of the Policy Period."  (Compl., Ex. A at Endorsement No. 2.)  It is undisputed that DS Waters, Inc.'s Chief Financial Officer and General Counsel received notice of the class action complaint on February 22, 2008.  It is also undisputed that DS Waters did not notify Twin City of the claim until October 27, 2008, nearly eight months later.  Still, DS

Waters says that the Notice Provision in Endorsement 2 does not bar coverage for a number of reasons.

First, DS Waters says that Twin City waived its late notice defense by failing to assert late notice as a reason for denial in its original denial letter.  The Court disagrees.  The initial denial letter made clear that Twin City had not addressed all of its defenses.  After denying coverage based on the Prior Acts Exclusion, the letter stated, "Given this coverage position, we have not addressed other provisions of the Policy which may apply to limit or exclude coverage." (Pl.'s Mot. for Summ. J., Ex. 22.)  Moreover, Twin City's final denial letter, sent shortly thereafter, expressly reserved its right to assert late notice as a defense, stating, "We reserve rights based upon DS Waters' failure to comply with the Policy's notice provisions until receipt of . . . information [relating to DS Waters' eight month delay in providing notice.]" (Id. at Ex. 23.)

Second, DS Waters says that Endorsement 2 does not apply because Twin City later issued an "amended policy" with a more favorable Notice Provision.  However, the so-called "amended policy" appears to be a computer-generated draft contained only in Twin City's electronic file.  Twin City submitted sworn testimony by Joseph Caban, its corporate representative, explaining the origin of the document. (See Def.'s Mot. for Summ. J., Ex. G.)  According to Caban, the underwriter for the DS Waters

policy asked his assistant for a draft copy of the policy. (Id. ¶ 14.) His assistant requested a "final" copy of the policy from the software database used by the company. (Id. ¶ 20.) She received a computer-generated email which stated "[a]ttached is a final copy of the above policy." (Id.) The underwriter made additional changes to the policy and delivered it to DS Waters' insurance broker later that day. (Id. ¶ 33.) Both parties signed the delivered policy. Neither the broker nor DS Waters saw the computer-generated draft version until after DS Waters notified Twin City of the claim. Based on these facts, no reasonable juror could find that the parties intended to agree to the terms set forth in the so-called "amended policy."

Third, DS Waters says that Endorsement 2 is invalid because it was not filed with the Georgia Department of Insurance. Section 33-24-9(a) of the Georgia Code requires endorsement forms to be filed with and approved by the Insurance Commissioner, unless the form is "of unique character designed for and used with relation to insurance upon a particular subject." O.C.G.A. § 33-24-9(a). The parties dispute whether Endorsement 2 is a form of "unique character" that is exempt from the filing requirement. Either way, however, the endorsement is valid. In Penn America Insurance Company v. Miller, 228 Ga. App. 659 (1997), the Georgia Court of Appeals held that failure to comply with O.C.G.A. § 33-24-9(a) does not invalidate an endorsement unless there is reason to believe that the Commissioner would have

disapproved the unfiled endorsement. Id. at 659-60. There is no reason to believe that the Commissioner would have rejected the endorsement at issue here.

Fourth, DS Waters argues that the Notice Provision in Endorsement 2, which requires the "Insureds" to give notice within sixty days after "the General Counsel, Chief Financial Officer or the Human Resource Manager" becomes aware of the claim, is ambiguous and should be construed in its favor. Specifically, DS Waters says that "it is unclear whether the sixty-day deadline runs from the time that the first or last person specifically named receives notice." (Reply Br. in Supp. of Pl.'s Mot. for Summ. J. at 13.) DS Waters also says that it is unclear whether the phrase "Insureds" refers to DS Waters of America, Inc. (the insured company), DS Waters Holdings, LLC (the "Named Entity"), or both. The Court disagrees. It is clear that the sixty-day notice period begins to run when the first of the individuals receives notice, and that awareness by officers at DS Waters, Inc., an "Insured" under the policy, is sufficient to trigger the Notice Provision.

Fifth, DS Waters argues that it gave proper notice under Endorsement 2 because it notified its insurance broker about the claim. "Independent insurance agents or brokers are generally considered the agent of the insured, not the insurer." Southeastern Exp. Systems, Inc. v. Southern Guar. Ins. Co. of Georgia, 224 Ga. App. 697, 700 (1997). In some cases, however, an insurer may expressly delegate authority

to receive notice of claims to an independent broker. DS Waters says that Twin City did so here in an agency agreement between its parent company and the insurance broker. The agreement, however, is limited in scope. Although the agreement creates a "duty" on behalf of the broker to report any "actual or threatened claims," it does not authorize the broker to serve as an agent to receive notice from policyholders. (See Pl.'s Mot. for Summ. J. at Ex. 24, Ex. A.)

Finally, DS Waters says that its late notice is excused because it believed that the Twin City policy was an excess policy, not a primary policy. However, confusion about which policy applies does not excuse an insured from its obligation to give timely notice to its insurer. See Snow v. Atlanta Intern. Ins. Co., 182 Ga. App. 1 (1987) (ten-month delay in giving notice was unreasonable as a matter of law where insured driver knew accident was covered but was unsure of which policy applied). Accordingly, because DS Waters did not notify Twin City of its claim until eight months after its General Counsel and CFO became aware of the California class action, Twin City is entitled to summary judgment on all of DS Waters' claims.

## IV.  Conclusion

For the reasons stated above, the Plaintiff's Motion for Summary Judgment [Doc. 97] is DENIED and the Defendant's Motion for Summary Judgment [Doc. 98] is GRANTED.

SO ORDERED, this 5 day of May, 2011.


                                        /s/Thomas W. Thrash
                                        THOMAS W. THRASH, JR.
                                        United States District Judge